UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – FLINT

IN RE:

      RICHFIELD EQUITIES, L.L.C.,           Case No. 12-33788-dof
           Debtor.                        Chapter 7 Proceeding
                                              Hon. Daniel S. Opperman
_____/

SAMUEL D. SWEET,
      Plaintiff,
v.                                      Adversary Proceeding
                                      Case No. 14-3076-dof

BERNHARD RUMBOLD, BERNHARD RUMBOLD
TRUST, DATED DECEMBER 21, 2000, and
BERNHARD RUMBOLD REVOCABLE TRUST
AGREEMENT DATED DECEMBER 20, 2004,
      Defendants.
_____/

OPINION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

INTRODUCTION

On May 16, 2014, the Chapter 7 Trustee commenced this adversary proceeding by filing

a complaint against the Defendants, seeking to avoid and recover transfers of $59,743.33 under

11 U.S.C. §§ 547 and 550 and $214,243.33 under 11 U.S.C. §§ 548 and  550.  On July 1, 2014,

the Defendants filed an Answer, which set forth five defenses to the Trustee's Complaint: (1) the

transfers were intended to be reasonable, equivalent, contemporaneous exchanges for new value

pursuant to § 547(c)(1); (2) the transfers made to the Defendants for the payment of a debt

incurred by the Debtors[1] was in the ordinary course of business pursuant to § 547(c)(2); (3) both

the Defendants and the transferee acted in good faith; (4) the Defendants advanced new value to

---

[1] The Debtors in this jointly administered bankruptcy proceeding are: Richfield Equities, L.L.C, Case No. 12-33788;
Richfield Landfill, Inc., Case No. 12-33789; Richfield Management, L.L.C., Inc., Case No. 12-33790; and Waste
Away Disposal, L.L.C., Case No. 12-33791.

the Debtors on an unsecured basis after the transfers at issue pursuant to § 547(c)(4); (5) to the extent that the Trustee argues that the transfers were fraudulent, the Debtors operated as a consolidated business and, as a result, all of the Debtors received the benefit of services provided by the Defendants and all of the Debtors paid for them; (6) the Debtors' business did not have unreasonably small capital to conduct business after the transfers were made; (7) the Debtors were not insolvent at the time the transfers were made; and (8) the Trustee has failed to state a claim upon which relief can be granted.

The Trustee filed a Motion for Summary Judgment on January 22, 2015, seeking summary judgment on two of the Defendants' defenses. First, the Trustee argues that the repayment of "short terms loans" by the Debtors to the Defendants cannot constitute "value" for purposes of § 548 because the "short terms loans" were actually equity contributions. Second, the Trustee argues that the Debtors' payment of "salary" to the Defendants is not protected by the ordinary course of business defense of § 547 because neither the debt nor the transfer by the Debtors was made in the ordinary course of business or financial affairs of the Debtors and the Defendants.

The Defendants filed a Cross Motion for Summary Judgment on January 27, 2015. The Defendants argue that the salary payments received by the Defendants were payments made in exchange for reasonable, equivalent, and contemporaneous value, and, as such, those transfers are exempt from the Trustee's preference and fraudulent conveyance actions. The Defendants also argue that the loans repaid by the Debtor were short term loans, not capital contributions, and, as such, they were made in exchange for reasonably, equivalent, and contemporaneous value and therefore are exempt from Trustee's preference and fraudulent conveyance actions.

The Defendants filed a Reply to Trustee's Motion on February 9, 2015, and the Trustee filed a Response on February 10, 2015.

FACTS

The Defendant, Mr. Rumbold, is the president of each of the Debtors. The indebtedness of the Debtors to Comerica Bank is guaranteed by Mr. Rumbold. Mr. Rumbold is the settlor and trustee of the two trust entities named as the Defendants in this proceeding. Mr. Rumbold is also a member and "manager/assistant manager" of Rumbold & Family, LLC. Rumbold & Family, LLC owns a 33% membership interest in Richfield Equities, L.L.C. Richfield Equities, L.L.C. in turn owns 100% of Debtors Richfield Landfill, Inc., Richfield Management, L.L.C., Inc., and Waste Away Disposal, L.L.C.

Mr. Rumbold claims that, in his capacity as the Manager of the Debtors, he was integral in running the day-to-day operations, business affairs, banking relationships, and books and records of the Debtors. He was paid a "salary" in that capacity.[2]

On September 18, 2012, each Debtor filed a Chapter 11 bankruptcy petition. On February 25, 2013, the Court converted Debtors' cases from Chapter 11 to Chapter 7, and Samuel D. Sweet was appointed Trustee.

---

[2] The transfers of the alleged "salary payments" were as followed:

| Transferor | Transfer Clear Date/Check Date | Amount | Payment Form | Number |
|---|---|---|---|---|
| Richfield Mgmt., LLC | 3/13/2012 | $8,000.00 | check | 17236 |
| Richfield Mgmt., LLC | 4/18/2012 | $8,000.00 | check | 17531 |
| Richfield Mgmt., LLC | 5/14/2012 | $8,000.00 | check | 17816 |
| Richfield Mgmt., LLC | 6/14/2012 | $8,000.00 | check | 18064 |
| Richfield Mgmt., LLC | 7/18/2012 | $8,000.00 | check | 18369 |
| Richfield Mgmt., LLC | 8/17/2012 | $8,000.00 | check | 18560 |
| Richfield Mgmt., LLC | 9/7/2012 | $8,000.00 | check | 18687 |
| Richfield Mgmt., LLC | 9/13/2012 | $3,743.33 | check | 18715 |

3

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F) (proceedings to determine, avoid, or recover preferences) and (H) (proceedings to determine, avoid, or recover fraudulent conveyances).

The issues in this matter arise from Title 11 of the United States Code and do not involve any matter which limits this Court's jurisdiction as detailed by the United States Supreme Court in *Stern v. Marshall*, ---- U.S. ----, 131 S. Ct. 2594, 2608, 180 L.Ed.2d 475 (2011), and later by the United States Supreme Court in *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014). *See also Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012).

## APPLICABLE LAW

### Summary Judgment Standard

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy adversary proceedings by Fed. R. Bankr. P. 7056. Federal Rule of Bankruptcy Procedure 7056(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Choate v. Landis Tool Co.*, 46 F. Supp. 774 (E.D. Mich. 1980). The moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)). The burden then shifts to the nonmoving party once the moving party has met its burden, and the

nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Industries, Inc.*, 764 F. Supp. 1223, 1227 (E.D. Mich. 1991).

## ANAYLSIS

### 1. **Whether the "short term loans" were actually equity contributions?**

The Trustee argues that the Defendants' "short term loans" should be properly re-characterized as equity contributions for purposes of § 548 despite the fact that the Defendants are not shareholders/members of the Debtors.[3] The Trustee cites a string of cases for the proposition that re-characterization is applicable to non-shareholders. *See In re First NLC Fin. Servs.*, 415 B.R. 874, 879 (Bankr. S.D. Fla. 2009) ("Defendants argue that there exists no basis upon which this Court may correctly recharacterize the loans at issue because in the Eleventh Circuit recharacterization is *only* available in cases involving shareholder loans, and not in cases involving loans made by non-shareholders . . . . The Court does not agree.") (emphasis in original); *Cohen v. KB Mezzanine Fund II, LP (In re SubMicron Sys. Corp.)*, 432 F.3d 448, 451 (3d Cir. 2006) (plan administrator sought to recharacterize lender's secured debt investments as

---

[3] The alleged fraudulent transfers are as follows:

| Transferor | Transfer Clear Date/Check Date | Amount | Payment Form | Number |
|---|---|---|---|---|
| Richfield Mgmt., LLC | 1/12/2011 | $50,000.00 | check | 13489 |
| Richfield Mgmt., LLC | 2/7/2011 | $4,500.00 | check | 13668 |
| Richfield Mgmt., LLC | 4/7/2011 | $100,000.00 | check | 14367 |
| Richfield Mgmt., LLC | 3/13/2012 | $8,000.00 | check | 17236 |
| Richfield Mgmt., LLC | 4/18/2012 | $8,000.00 | check | 17531 |
| Richfield Mgmt., LLC | 5/14/2012 | $8,000.00 | check | 17816 |
| Richfield Mgmt., LLC | 6/14/2012 | $8,000.00 | check | 18064 |
| Richfield Mgmt., LLC | 7/18/2012 | $8,000.00 | check | 18369 |
| Richfield Mgmt., LLC | 8/17/2012 | $8,000.00 | check | 18560 |
| Richfield Mgmt., LLC | 9/7/2012 | $8,000.00 | check | 18687 |
| Richfield Mgmt., LLC | 9/13/2012 | $3,743.33 | check | 18715 |

equity contributions); *Aquino v. Black (In re AtlanticRancher, Inc.)*, 279 B.R. 411 (Bankr. D. Mass. 2002) (Chapter 7 trustee sought to recharacterize loans made by non-shareholder insiders as equity); *Gasser v. Infanti Int'l, Inc.*, 2008 U.S. Dist. LEXIS 56686, fn 8 (E.D.N.Y. July 23, 2008) (recharacterization analysis applicable to non-shareholder insider); *In re Hallmark Builders, Inc.*, 1997 Bankr. LEXIS 282 (Bankr. M.D. Fla. 1997) (recharacterization analysis applicable to non-shareholder insider).

The Trustee argues that the "short term loans" extended to the Debtors by the Defendants were actually capital contributions and, therefore, no "claim" or "right to payment" arose as a result of those loans. The Defendants, however, argue that the loans were legitimate "short term loans," used to cover short term cash flow problems due to certain municipalities making late payments. The Defendants assert that, within the two year period before the filing of the Debtors' petitions, the Defendants made short-term loans to the Debtors that totaled $450,000.00, and that the Debtors repaid a total of $150,000.00 to Richfield Management, LLC during that period. The Trustee cites the *Roth Steel* factors as set forth in *AutoStyle Bayer Corp. v. MascoTech, Inc. (In re Autostyle Plastics, Inc.)*, 269 F.3d 726, 749-50 (6th Cir. 2001) in support of his position that these "short term loans" were actually equity contributions, and thus cannot constitute a claim that would entitle the Defendants to a right to payment.

> The factors are: (1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments. *Roth Steel,* 800 F.2d at 630.

*In re AutoStyle Plastics, Inc.*, 269 F.3d at 749-50.

The Defendants contest some of the arguments made by the Trustee and further argue that summary judgment should be granted in their favor. The Court concludes that some elements favor the Trustee, but the other elements either are in factual dispute or are in favor of the Defendants. As the Court must have a complete record on all elements, the Court denies summary judgment, but analyzes the remaining factors.

### a. The names given to the instruments.

"The absence of notes or other instruments of indebtedness is a strong indication that the advances were capital contributions and not loans." *In re Autostyle Plastics, Inc.*, 269 F.3d at 750. Here, no promissory note or instrument of indebtedness evidencing the Defendants' "short term loans" and Debtors' obligation to repay were created. This is a strong indication that the advances were equity.

The Defendants concede that there were no promissory notes executed between the Debtors and the Defendants.

### b. The presence or absence of fixed maturity date and schedule of payments

"The absence of a fixed maturity date and a fixed obligation to repay is an indication that the advances were capital contributions and not loans." *In re Autostyle Plastics, Inc.,* 269 F.3d at 750. Here, there was no fixed maturity date or schedule of payments. This is an indication that the advances were equity.

The Defendants assert, however, that, although there was no fixed maturity date, it was "fixed in the notational sense pay it as soon as possible, tomorrow if you can." Although a vague statement, a factual issue is raised that is sufficient to require more development.

c. <u>The presence or absence of a fixed rate of interest and interest payments</u>

"The absence of a fixed rate of interest and interest payments is a strong indication that the advances were capital contributions rather than loans." *In re Autostyle Plastics, Inc*., 269 F.3d at 750. Here, there was no fixed rate of interest or interest payments. This is a strong indication that the advances were equity.

The Defendants assert, however, that by their nature, the short-term loans extended by the Defendants to the Debtors were short in duration and any associated interest would therefore be negligible in amount. While true, the lack of a fixed rate of interest weighs in favor of the Trustee.

d. <u>The source of repayments</u>

"If the expectation of repayment depends solely on the success of the borrower's business, the transaction has the appearance of a capital contribution." *In re Autostyle Plastics, Inc.,* 269 F.3d at 751. Stated conversely, in order to constitute debt, a "reasonable expectation of repayment must exist which does not depend solely on the success of the borrower's business." *In re First NLC Fin. Servs*., 415 B.R. 874, 881 (Bankr. S.D. Fla. 2009).

The Trustee asserts that the repayment of the "short term loans" was based on the success of the Debtor.

The Defendants assert that they extended loans to the Debtors based on the Defendants' knowledge of the Debtors' imminent receipt of sizeable receivables from certain municipalities associated with pre-existing contracts and not future business success. The Defendants successfully raise a genuine issue of material fact as to this element. More facts are needed to link payment sources to actual or planned payments.

### e. The adequacy or inadequacy of capitalization

"Thin or inadequate capitalization is strong evidence that the advances are capital contributions rather than loans." *In re Autostyle Plastics, Inc.*, 269 F.3d at 751. The Sixth Circuit has also held that a court applying this factor must analyze capitalization at the time the transfer was made and that factors such as "serious financial straits" and "negative working capital" tend to show that the transfers are equity. *Id.* When a corporation is undercapitalized, a court is more skeptical of purported loans made to it because they may in reality be infusions of capital. *Id.* at 746-47.

The Trustee asserts that the Defendants were the only lenders available on short notice to make the loan and that the Debtors were insolvent and not adequately capitalized at the time the alleged short term loans were made. The Trustee additionally asserts that the Procedures and Litigation Schedule in this case states that the Defendants are "conclusively deemed" to have conceded the issue of insolvency of a debtor if it fails to provide notice of intent to challenge this issue and file a Rebuttal Expert Report. The Defendants did not provide such a notice or file any expert report. The Trustee asserts that the Defendants cannot provide any contradictory evidence on this issue because the discovery deadline has passed and the Defendants have not presented any evidence on this issue.

The Defendants claim that it can offer evidence that the Debtors had a debt-to-equity ratio of approximately 6:1 and that they were adequately capitalized. The record is not clear as to this element to warrant granting summary judgment.

### f. The identity of interest between the creditor and the stockholder

"If stockholders make advances in proportion to their respective stock ownership, an equity contribution is indicated." *In re Autostyle Plastics, Inc.*, 269 F.3d at 751. Advances in

9

proportion to stock ownership is not present here and thus this element is in favor of the Defendants.

### g. The security for advances

"The absence of a security for an advance is a strong indication that the advances were capital contributions rather than loans." *In re Autostyle Plastics, Inc*., 269 F.3d at 752. Here, there was no security given for the "short term loans." This is a strong indication that the advances were actually equity.

The Defendants assert that, because Comerica Bank had a security interest over virtually all of the Debtors' Property, the Defendants' failure to obtain security for the short-term loans is of little consequence. The Defendants also contend the Debtors offering the Defendants security would arguably have been in violation of its loan agreement with Comerica and obtaining security for each short-term loan would have been administratively burdensome to the Defendants. The Court cannot weigh this element with this incomplete record.

### h. The corporation's ability to obtain outside financing.

"When there is no evidence of other outside financing, the fact that no reasonable creditor would have acted in the same manner is strong evidence that the advances were capital contributions rather than loans." *In re Autostyle Plastics, Inc.*, 269 F.3d at 752. The Trustee asserts that outside financing was not available to the Debtors at the time of the "short term loans" and the only available funding source was from the Defendants.

The Defendants assert that Comerica was not sympathetic and took a long time to respond to their requests. Comerica apparently increased the credit line some, but did not increase it enough to support the business needs of the Debtors. The Defendants argue that

dealing with the Defendants was easier and more convenient. While perhaps true, the Court sees genuine issues of material facts.

    i. <u>To the extent to which advances were subordinated to claims of outside creditors</u>.

"Subordination of advances to claims of all other creditors indicates that the advances were capital contributions and not loans." *In re Autostyle Plastics, Inc.*, 269 F.3d at 752. The Trustee asserts that the Defendants entered into a subordination agreement, but this factor likely cannot be given full weight because it is unclear of that subordination agreement applied to these "short-term loans."

The Defendants assert that the short-term loans in this case were not subordinated, and the Defendants would not have given the loans if they were required to be subordinated, and, therefore, this factor weighs in favor of a finding of indebtedness rather than equity. A genuine issue of material fact remains given the differences as to this element.

    j. <u>The extent to which advances were used to acquire capital assets.</u>

"Use of advances to meet the daily operating needs of the corporation, rather than to purchase capital assets, is indicative of bona fide indebtedness." *In re Autostyle Plastics, Inc.*, 269 F.3d at 752. Here, the Defendants testified that the "short term loans" were used for the following purposes: employee payroll and acquisition of capital assets like recycle bins and trucks for waste hauling services. To the extent the advances were used for capital assets, this evidences that the advances were equity. Likewise, if the advances were for other purposes, a loan exists. The parties need to develop this element.

"The failure to establish a sinking fund for repayment is evidence that the advances were capital contributions rather than loans." *In re Autostyle Plastics, Inc*., 269 F.3d at 753. Here, no sinking fund was established. This evidences that the advances were equity.

The Defendants assert that, because these short-term loans were expected to be repaid quickly, there would be no purpose served by establishing a sinking fund and, therefore, this factor is irrelevant. In contrast, the Trustee argues that the short-term loans were actually equity contributions and no reasonably equivalent value was received in exchange for the transfers by the Debtors to the Defendants. The Defendants argue that the short-term loans were actual indebtedness rather than capital contributions and that the Defendants had a valid claim against the Debtors for repayment of those loans. Again, the record is disputed and unclear.

**2. Whether the salary payments were made in the ordinary course of business or financial affairs of the Debtors and Defendants?**

The ordinary course of business defense requires an examination of both the underlying debt and the transfer. The Trustee may not avoid a transfer under § 547(c)(2)(A):

> (2) to the extent that such transfer was in payment of a *debt* incurred by the debtor in the ordinary course of business or financial affairs of the debtor *and the transferee*, and such *transfer* was-- (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or (B) made according to ordinary business terms;

11 U.S.C. §547(c)(2) (emphasis added). The focus of the Court's inquiry "must be directed to an analysis of the business practices which were unique to the particular parties under consideration and not to the practices which generally prevailed in the industry of the parties." *In re Fulghum Constr. Corp*., 872 F.2d 739, 743 (6th Cir. 1989).

The Trustee argues that the "salary" payments were initially made to Rumbold & Family, LLC. However, this practice stopped on or around March 2012. From that period forward, the "salary" payments were made to the Defendants. The Trustee argues that the transfers were not in the ordinary course of business or financial affairs of either the Debtors or the Transferee because of that change in circumstances. The Defendants assert that the logistics of the payments are irrelevant since they were eventually received by the Defendants and were made for the same purpose.

While the Court notes the Defendants' arguments, the record does not explain why the Defendants' arguments warrant granting summary judgment. The Court will not favor form over substance, but likewise needs a better, more complete explanation before granting summary judgment.

### 3. <u>Whether the salary payments were made for reasonable, equivalent, and contemporaneous value?</u>

The Defendant next contends that the "salary" payments are protected as "reasonable, equivalent, and contemporaneous value pursuant to Section 547(c)(1)(A) and (B). In order to demonstrate a contemporaneous exchange defense, the Defendant must establish that (1) the parties intended that the exchange be substantially contemporaneous, and (2) the exchange must in fact be substantially contemporaneous. *In re Arnett*, 731 F.2d 358, 362 (6th Cir. 1984).

Mr. Rumbold argues that he continued to work for the Debtors in the same capacity and for the same number of hours per week within the two years preceding the filing. He further asserts that the payments were made at the same time every month for the same work done. The Defendants claim that the Debtors received reasonable, equivalent, and contemporaneous value in exchange for the transfer of salary payments to the Defendants.

The Trustee argues that the Defendants have not presented sufficient evidence relating to the timing of the transfers, whether the transfers were intended to be substantially contemporaneous, or whether the transfers were in fact substantially contemporaneous.

While a closer question because there is a temporal connection between service and payment, a fact issue still remains as to the value of the service. By a closer margin, the Court concludes that a genuine issue of material fact exists to preclude summary judgment.

<u>CONCLUSION</u>

For the reasons stated in this Opinion, the Court finds that certain elements are not in issue, but sufficient genuine issues of material facts remain to preclude summary judgment. Counsel for the Trustee is directed to prepare an Order consistent with this Opinion and the presentment of order rules of this Court.

.

**Signed on May 20, 2015**

                                                    **/s/ Daniel S. Opperman**
                                         **Daniel S. Opperman**
                                         **United States Bankruptcy Judge**